DocuSign Envelope ID: 1EEBBA5F-5D78-4BD8-8E57-C3C39FD9F900

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WASHINGTON AT TACOMA

| | |
|---|---|
| **TIFFNEY HOOBER** and **DAVID MORDUE**, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>**MOVEMENT MORTGAGE, LLC**, a Delaware Corporation,<br><br>Defendant. | **Case No. 3:18-cv-6001-BHS**<br><br>**DECLARATION OF PLAINTIFF DAVID MORDUE IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION, DISMISS CLASS CLAIMS, AND STAY PROCEEDINGS** |

DECLARATION OF PLAINTIFF DAVID MORDUE IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION, DISMISS CLASS CLAIMS, AND STAY PROCEEDINGS

CASE NO. 3:18-CV-06001-BHS

HAMMONDLAW, P.C.
1829 REISTERSTOWN RD., SUITE 410
BALTIMORE, MD 21208
Tel: (310) 601-6766
Fax: (310) 25-2385

Page 1

DocuSign Envelope ID: 1EEBBA5F-5D78-4BD8-8E57-C3C39FD9F900

I, David Mordue, declare as follows:

1. I am over 18 years of age and have personal knowledge of the following facts. I would so testify competently to the below statements if called to do so in a court of law.

2. I am a Named Plaintiff/Class Representative in the above-referenced action.

3. I first contacted Movement Mortgage LLC ("Movement") in or about January 2018 to inquire about employment.

4. I then discussed my potential employment with Jim Sheredos, Movement's West Coast Recruiting Manager in or about late January or early February 2018.

5. Thereafter I discussed my potential employment with Mary Paine, the "Market Leader," a title which at Movement is roughly equivalent to Regional Manager. This discussion also took place in or about late January or early February 2018.

6. On February 1, 2018, I had a telephone interview with Mr. Sheredos.

7. Shortly thereafter, I met in person with Ms. Paine to further discuss my prospective employment.

8. Movement expressed strong interest in hiring me right away, and explained that they only needed to make sure I would be able to obtain the licenses I would need to work for them before formally hiring me.

9. During my discussions with Movement, I already held a valid National license as a mortgage broker. I used this license in previous employment and had never needed a State license.

10. In order to work for Movement, Movement required me to convert my National license to a State license. After I converted my license to Washington state license, Movement instructed me to take several hundred dollars worth of classes and pay approximately $150 in licensing fees, all of which Movement promised to reimburse.

DECLARATION OF PLAINTIFF DAVID MORDUE IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION, DISMISS CLASS CLAIMS, AND STAY PROCEEDINGS

CASE NO. 3:18-CV-06001-BHS

HAMMONDLAW, P.C.
1829 REISTERSTOWN RD., SUITE 410
BALTIMORE, MD 21208
Tel: (310) 601-6766
Fax: (310) 25-2385

Page 2

DocuSign Envelope ID: 1EEBBA5F-5D78-4BD8-8E57-C3C39FD9F900

11. Movement also asked me to complete a personality test, which I did on February 8, 2018.

12. On or before February 12, 2018, Movement indicated to me that I would be hired, though my formal start date would be delayed until my license was actually issued.

13. The same day, I spoke with Ms. Paine over the phone at which time she shared confidential and proprietary information, including Movement's market analysis and assessment of changes to a mortgage insurance program's guidelines. She followed up this conversation by sending me an internal Movement document by email which covered the same topics.

14. Through Movement's overall conduct, including its representations to me, and its instructions to incur licensure expenses it promised to reimburse, it was my understanding at the time that Movement had firmly decided to hire me and that my formal start date was contingent only on the necessary licenses being obtained.

15. As I had already passed all tests required to obtain those licenses by February 12, 2018, I understood Movement's hiring decision to be final. As a result, I stopped looking for other employment.

16. On or about February 13, 2018, I received an email from Movement with the subject line "Offer Letter."

17. On or about February 15, 2018, Movement sent me a link to a DocuSign envelope containing a number of documents, including an "Employee Arbitration Agreement." There was only one link provided and all documents were available through that one link. I signed all the documents at the same time by accessing them via the link.

18. At no point during any of the discussions about my hiring did Movement present me with a copy of the "Mutual Agreement to Arbitrate." Nor did Movement otherwise disclose to me that it would be asking me to sign such an agreement.

DECLARATION OF PLAINTIFF DAVID MORDUE IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION, DISMISS CLASS CLAIMS, AND STAY PROCEEDINGS

CASE NO. 3:18-CV-06001-BHS

HAMMONDLAW, P.C.
1829 REISTERSTOWN RD., SUITE 410
BALTIMORE, MD 21208
Tel: (310) 601-6766
Fax: (310) 25-2385

Page 3

DocuSign Envelope ID: 1EEBBA5F-5D78-4BD8-8E57-C3C39FD9F900

19. Based on the way the paperwork was presented to me and my discussions with Movement, I did not believe the terms of any of the documents in the DocuSign envelope were open to negotiation. Movement indicated to me that these documents were standard Company documents and that completing them was required in order to work for Movement.

20. Because I had not been employed as of since February 1, 2018, and because I had not pursued other opportunities as a result of how certain Movement seemed to be about hiring me, I did not feel that I had meaningful choice to decline to sign any of the paperwork or agreements Movement presented to me. Additionally, if I declined to sign any of the paperwork, I would also have to forgo reimbursement for the expenses I incurred in order to work for Movement and for which Movement had promised to reimburse me once I was formally hired.

21. Throughout the hiring process, my impression based on the way Movement discussed the employment opportunity with me and made requests of me was that they wanted me to get all requirements completed as quickly as possible so that I could begin as soon as possible.

22. I have researched approximate travel, lodging, and meal costs if I were required to travel to Mecklenburg County, North Caroline to attend arbitration hearings and concluded based on that research that each trip would cost me approximately $750-$1,000.

I declare under penalty of perjury under the laws of the State of Washington and the United States that the foregoing is true and correct.

Executed March 4, 2019, in Kennewick, Washington.

David Mordue

David Mordue

DECLARATION OF PLAINTIFF DAVID MORDUE IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION, DISMISS CLASS CLAIMS, AND STAY PROCEEDINGS

CASE NO. 3:18-CV-06001-BHS

HAMMONDLAW, P.C.
1829 REISTERSTOWN RD., SUITE 410
BALTIMORE, MD 21208
Tel: (310) 601-6766
Fax: (310) 25-2385

Page 4