UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

TIFFNEY HOOBER and DAVID
MORDUE, individually, and on behalf
of others similarly situated,

                Plaintiffs,

   v.

MOVEMENT MORTGAGE, LLC, a
limited liability company, and DOES 1
through 50, Inclusive,

                Defendants.

CASE NO. C18-6001 BHS

ORDER GRANTING
DEFENDANTS' MOTION TO
COMPEL ARBITRATION ON AN
INDIVIDUAL BASIS AND STAY
PROCEEDINGS

This matter comes before the Court on Defendant Movement Mortgage, LLC's

("Movement") motion to compel arbitration on an individual basis, dismiss class claims,

and stay proceedings. Dkt. 7. The Court has considered the pleadings filed in support of

and in opposition to the motion and the remainder of the file and hereby grants the

motion for the reasons stated herein.

## I.   PROCEDURAL AND FACTUAL BACKGROUND

Movement is a mortgage lender headquartered in Indian Land, South Carolina,

which employs over 4,000 people around the United States. Dkt. 1, ⁋ 4. Movement

employed Plaintiffs Tiffney Hoober ("Hoober") in Tacoma, Washington as a mortgage

loan officer from November 2016 through September 2017, and David Mordue

("Mordue") (collectively, "Plaintiffs") in Kennewick, Washington from March 2018

through September 2018. *Id.* ¶¶ 2–3.[1] Hoober and Mordue are putative class

representatives seeking unpaid wages for themselves and on behalf of a putative class of

all other Movement employees paid on commission in Washington between 2015 and

2018 ("Class Members"). *Id.* ¶ 1. Hoober and Mordue each signed a Movement

Arbitration Agreement as part of their hiring process.[2]

Plaintiffs filed their complaint on December 7, 2018, alleging Movement violated

Washington law by failing to pay Plaintiffs or Class Members for time spent performing

non-sales tasks or for rest breaks, failing to pay overtime, failing to pay for missed meal

breaks, and failure to pay all wages due at pay periods and at termination. *Id.* ¶¶ 8–16. On

January 28, 2019, Movement filed the instant motion to compel arbitration, dismiss class

claims, and stay the proceedings. Dkt. 7. On March 4, 2019, Plaintiffs responded. Dkt.

14. On March 8, 2019, Movement replied. Dkt. 22.

## II.  DISCUSSION

### A.  The Federal Arbitration Act

The Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA") makes agreements to

arbitrate "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in

---

[1] Additional factual detail about Hoober and Mordue's hiring processes with Movement is provided in the discussion of procedural unconscionability.

[2] The agreements contain slightly different provisions; the Court will refer to Hoober's Arbitration Agreement, Dkt. 8-1, as the "Hoober Agreement" and to Mordue's Agreement, Dkt. 8-2, as the "Mordue Agreement."

equity for the revocation of any contract." 9 U.S.C. § 2. The FAA supports a liberal

policy favoring arbitration and reinforces the "fundamental principle that arbitration is a

matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 336 (2011). The

FAA requires courts to "rigorously enforce" agreements to arbitrate, *Mitsubishi Motors

Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985), to ensure that private

contractual provisions "are enforced according to their terms." *Stolt–Nielsen S.A. v.

AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684 (2010) (quoting *Volt Info. Sciences, Inc. v.

Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989)).

On review of a motion to compel arbitration, the court's role is limited to

determining (1) whether the parties entered into a valid agreement to arbitrate and if so

(2) whether the present claims fall within the scope of that agreement. *Chiron Corp. v.

Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). The party seeking to

compel arbitration bears the burden of proof on these questions. *Ashbey v. Archstone

Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015) (citing *Cox v. Ocean View Hotel

Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008)). The FAA requires courts to stay

proceedings when an issue before the court can be referred to arbitration.  9 U.S.C. § 3.

### 1.       Scope of the Arbitration Agreement

In determining whether to compel arbitration, the Court must determine whether

the dispute "falls within the scope of the parties' agreement to arbitrate." *Chiron Corp.*,

207 F.3d at 1130. Movement argues that the agreements "specifically provide that they

cover 'any claims or controversies during or following [] employment,' and specifically

cover claims for wages, other compensation due, penalties, and claims under state wage

and hour laws." Dkt. 7 at 10.[3] Section 4 of the Hoober and Mordue Agreements, titled

"Claims Subject to Arbitration" refers to employment-based claims like wrongful

termination, breach of contract, breach of duty, and disclosure of trade secrets. Dkts. 8-1,

8-2. Movement makes specific reference only to Plaintiffs' Washington law claims as

being with the scope of the agreement. Dkt. 7 at 7. Plaintiffs do not dispute whether their

claims fall within the scope of the agreements and rely on their argument that the entirety

of the agreements to arbitrate are invalid because unconscionability permeates the

agreements. Dkt. 14 at 21–22. Therefore, Plaintiffs appear to concede that the merits of

their claims fall within the scope of the agreements to arbitrate.

## 2. Valid Agreement to Arbitrate

Once a court establishes that a claim is within the scope of an arbitration

agreement, the agreement is "valid, irrevocable, and enforceable, save upon such grounds

as exist in law or in equity for the revocation of any contract." 9 U.S.C. § 2.

To determine whether the parties agreed to arbitrate, courts apply ordinary state-

law contract principles. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944

(1995). In Washington, "[t]he role of the court is to determine the mutual intentions of

the contracting parties according to the reasonable meaning of their words and acts."

*Fisher Props., Inc. v. Arden-Mayfair, Inc.*, 106 Wn.2d 826, 837 (1986). Notwithstanding

the FAA's presumption in favor of arbitrability, a court may consider generally

applicable state law contract defenses—e.g., fraud, unconscionability, and duress—in

---

[3] Here, Movement appears to refer to both the opening language and section 4 of the Hoober and Mordue Agreements. Dkts. 8-1; 8-2.

determining whether an arbitration provision is valid.  *See* 9 U.S.C. § 2; *Rent-a-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68 (2010).

Plaintiffs argue that the agreements to arbitrate are unenforceable because they are both procedurally and substantively unconscionable. This argument requires the Court to make a preliminary decision whether Plaintiffs' challenges to enforcing the agreements should be decided by the Court or by the arbitrator. *Cox*, 533 F.3d at 1119. While the Supreme Court has explained that "unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance," *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 446 (2006), in resisting the motion to compel, Plaintiffs do challenge the arbitration agreement itself. Dkt. 14. When the challenge is to the arbitration clause itself, the court's duty to evaluate it applies even when substantive state law requires the court to consider "the circumstances surrounding the making of the entire agreement." *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1264 (9th Cir. 2006). "In sum, our case law makes clear that courts properly exercise jurisdiction over claims raising (1) defenses existing at law or in equity for the revocation of (2) the arbitration clause itself." *Cox*, 533 F.3d at 1120.

"In Washington, either substantive *or* procedural unconscionability is sufficient to void a contract." *Gandee v. LDL Freedom Enterprises, Inc.*, 176 Wn.2d 598, 603 (2013) (citing *Alder v. Fred Lind Manor*, 153 Wn.2d 331, 347 (2004) (en banc)). "Severance is the usual remedy for substantively unconscionable terms, but where such terms 'pervade' an arbitration agreement, [Washington courts] 'refuse to sever those provisions and declare the entire agreement void.'" *Gandee*, 176 Wn.2d at 603 (quoting *Alder*, 153

Wn.2d at 358). When a court finds unconscionable provisions within an arbitration

provision, "[s]uch unenforceable provisions may . . . be severed from any valid and

enforceable provisions, even those also contained within the arbitration provision."

*Nagrampa*, 469 F.3d at 1265. Therefore, if the Court finds unconscionable provisions

pervade the agreements to arbitrate, it will declare the agreements to arbitrate void.

Conversely, if the Court finds unenforceable provisions may be severed from the

agreements to arbitrate, it will do so and uphold the remainder of the agreements.

### a.     Procedural Unconscionability

Procedural unconscionability refers to "impropriety during the formation of the

contract." *Nelson v. McGoldrick*, 127 Wn.2d 124, 131 (1995). Washington courts

evaluating the circumstances surrounding an agreement to arbitrate to determine whether

the signer lacked meaningful choice consider (1) the way in which the contract was

entered, (2) whether the signer had a reasonable opportunity to understand the terms of

the contract, and (3) determine whether the important terms were "'hidden in a maze of

fine print.'" *Alder*, 153 Wn.2d at 347 (quoting *Schroeder v. Fageol Motors, Inc.*, 86

Wn.2d 256, 260 (1975)). "The burden of demonstrating that an arbitration agreement is

not enforceable is on the party opposing the arbitration." *Romney v. Franciscan Med.*

*Grp.*, 186 Wn.App. 728, 735 (2015), *review denied*, 184 Wn.2d 1004.

> At minimum, an employee who asserts an arbitration agreement is
> procedurally unconscionable must show some evidence that the employer
> refused to respond to her questions or concerns, placed undue pressure on
> her to sign the agreement without providing her with a reasonable
> opportunity to consider its terms, and/or that the terms of the agreement
> were set forth in such a way that an average person would not understand
> them.

*Zuver v. Airtouch Commc'ns, Inc.*, 153 Wn.2d 293, 306–07 (2004).

Hoober first contacted Movement in September 2016 to inquire about employment. Dkt. 16, ⁋ 3. Movement was receptive to her inquiry and had a representative meet with and speak with her multiple times in September and October, leading her to believe "Movement had firmly decided to hire [her] and that only paperwork remained." *Id*. ⁋⁋ 4–8. She stopped seeking other employment based on this belief, received an offer letter on October 24, 2016, and received a packet of forms including the Arbitration Agreement and Team Leader Agreement on October 31, 2016. *Id*. ⁋⁋ 9–12. Movement's representative told her that "it was urgent that [she] complete the paperwork as soon as possible," explaining in numerous phone calls that "he was anxious that [she] return the paperwork right away" so that she could attend a training scheduled for November. *Id*. ⁋ 14. Hoober declares that "[b]ecause of this pressure from [Movement], I completed the new hire paperwork the same day it was sent to me." *Id*.

Mordue first contacted Movement to inquire about employment in January 2018. Dkt. 17, ⁋ 3. Mordue had multiple conversations and interviews with Movement and declares that "Movement expressed strong interest in hiring me right away, and explained that they only needed to make sure I would be able to obtain the licenses I would need to work for them before formally hiring me." *Id*. ⁋ 8. Movement require him to convert his national mortgage broker's license to a Washington state license, and "instructed [him] to take several hundred dollars worth of classes and pay approximately $150 in licensing fees, all of which Movement promised to reimburse." *Id*. ⁋⁋ 9–10. Mordue received an

oral offer of employment on February 12, 2018 and discussed confidential and proprietary information with Movement's representative. *Id.* ¶¶ 12–13. Mordue stopped looking for other employment, received an offer letter on February 13, 2018, and received a packet of forms including the Arbitration Agreement and Team Leader Agreement on February 15, 2018, which he signed. *Id.* 15–17. Mordue declares that "[b]ecause I had not been employed as of since [sic] February 1, 2018, and because I had not pursued other opportunities as a result of how certain Movement seemed to be about hiring me, I did not feel that I had meaningful choice to decline to sign any of the paperwork or agreements Movement presented to me." *Id.* ¶ 20. He further declares that "if I declined to sign any of the paperwork, I would also have to forgo reimbursement for the expenses I incurred in order to work for Movement and for which Movement had promised to reimburse me once I was formally hired." *Id.*

Plaintiffs do not allege that Movement refused to answer their questions about the agreement and do not allege that the terms were beyond the comprehension of an average person or hidden in a maze of fine print. While Plaintiffs received the agreements as part of a package of documents, the agreements were contained in independent, plainly written documents with fewer than four pages of contracted terms. Plaintiffs were "required to initial each page, sign the document, and then initial and sign an 'Acknowledgement' that they had the opportunity to read the Agreement . . . ." Dkt. 22 at 5; *see also* Dkt. 8.

Alluding to the opportunity to ask questions, Mordue alleges that he was given the agreement "without any opportunity to negotiate its terms." Dkt. 14 at 8 (citing Dkt. 17, ¶

19). Hoober similarly argues that she understood all employment forms had to be completed with no opportunity to negotiate. Dkt. 14 at 10 (citing Dkt. 16, ¶ 13). However, understanding that the terms could not be changed is substantively different from asking questions about the terms and being refused an answer and has not been found in Washington courts to be a basis for procedural unconscionability. *Romney*, 186 Wn.App. at 736–40 (finding no procedural unconscionability when employees attempted to negotiate terms of arbitration agreement and were refused).

Regarding undue pressure and lack of reasonable opportunity to consider the terms, Plaintiffs make a fair case that they were under some pressure to sign the arbitration agreements. Plaintiffs explain that by the time they received the package of documents containing the agreements, "each had been led to believe by Movement that employment was virtually guaranteed and each had taken significant steps in reliance on an offer of employment by Movement, including stopping looking for other work." Dkt. 14 at 13 (citing Dkt. 17, ¶¶ 14–17; Dkt. 16, ¶15). Mordue had incurred expenses in reliance on his prospective employment, and Hoober "was pressured to complete the new hire paperwork quickly in order to participate in training that was taking place shortly after the paperwork was sent to her." *Id*. at 13.

Movement argues that the agreements are enforceable because Plaintiffs each voluntarily executed the arbitration agreements and failed to exercise the option to opt out of arbitration within thirty days of signing. Dkt. 7 at 6–7. On one hand, the opt-out provision was clearly indicated under the heading "Opt Out Rights" in the last paragraph of the agreement and features a minimally burdensome procedure. Hoober Agreement

§ 13; Mordue Agreement § 13. During the thirty-day period, Plaintiffs arguably could have reviewed the agreements and consulted counsel to make a more informed choice. *Alder*, 153 Wn.2d at 349 (reasoning that a week was ample opportunity to consider and consult counsel about arbitration agreement).

On the other hand, under the Court's reading of the contracts, the opportunity to opt out is not costless. Plaintiffs do not address the opt-out provision in their briefing. Section 13 of the Hoober Agreement states that "If you opt out, you will not receive the consideration provided to those who sign the Agreement and do not opt out thereafter," and section 13 of the Mordue Agreement states that "If you opt out, you will not receive the consideration provided to those who sign the Agreement and do not opt out thereafter, including the ability to raise disputes through the arbitration process." The meaning of "consideration" is not defined in the Agreement; consideration in a contract for employment is typically pay. Moreover, while neither section 13 nor any other section of the Hoober's Agreement referred her to the Team Leader Agreement for additional information on the opt-out provision's impact on her rights, section 8 of her Team Leader Agreement, titled "Choice of Law and Forum/Jurisdiction" states that "should Employee opt out of the Employee Arbitration Agreement, the Parties agree that any litigation between the Parties may only be brought in federal district court in Mecklenburg County, North Carolina . . . ." Dkt. 21-1 at 12.[4] In the Court's reading, the contract operates to

---

[4] Mordue's employment documents beyond his arbitration agreement were not included in the record. If his accompanying contracts include the same provision as Hoober's Team Leader Agreement regarding consent to jurisdiction in North Carolina, the Court's conclusion would not change. If his accompanying contracts do not require consent to jurisdiction in a state

1    make litigation substantially less appealing, both based on the cost of travel to a distant

2    forum and because the question of what substantive law would apply in the North

3    Carolina federal district court is unclear. Because the opt out provision is somewhat

4    confusing and misleading, the Court finds it does not advance Movement's argument.

5         It is concerning that Hoober was under some pressure to complete her forms

6    quickly and that Mordue was asked to expend substantial funds on reliance on the offer

7    of employment before the contract was presented. However, neither Plaintiff argues that

8    they asked questions or asked for additional time to consider the agreements or consult

9    counsel. *See Alder*, 153 Wn.2d at 350–51 (reasoning that if employee can show employer

10   had threatened to fire him if he did not sign the agreement despite his indication of a lack

11   of understanding, those facts would support a claim of procedural unconscionability).

12   Plaintiffs initialed each page of the agreement and initialed each statement on a final page

13   titled "Acknowledgement of Execution of Mutual Agreement to Arbitrate," including "I

14   had an opportunity to ask questions concerning the Agreement and I received satisfactory

15   answer to my questions before I signed the Agreement," "I was given a reasonable

16   opportunity consult with an attorney of my choice concerning the Agreement before I

17   signed it," and "No one placed any undue pressure on me to sign the Agreement." Dkts.

18   8-1, 8-2.

19        Under the entirety of the circumstances, the Court finds that Plaintiffs have failed

20   to meet their burden to provide the minimum showing as the party opposing arbitration

21   _____

22   other than Washington, that would constitute an additional fact against a finding of procedural
     unconscionability.

that the arbitration agreements are not enforceable due to procedural unconscionability.

*Zuver*, 153 Wn.2d at 306–07; *Romney*, 186 Wn.App. at 735.

### b. Substantive Unconscionability

Substantive unconscionability involves "cases where a clause or term in the contract is alleged to be one-sided or overly harsh." *Nelson*, 127 Wn.2d at 131. Plaintiffs argue that the choice of law provisions in both the Hoober Agreement and the Mordue Agreement, the one-sided nature of both agreements, the confidentiality provisions in both agreements, and the venue provision in the Mordue Agreement are substantively unconscionable. Plaintiffs argue that these unconscionable provisions in the agreements "operate in concert to eliminate any realistic possibility of relief," and so the Court should refuse to enforce either the Hoober Agreement or the Mordue Agreement. Dkt. 14 at 21 (citing *McKee*, 164 Wn.2d at 402).

First, Plaintiffs argue that both the Mordue Agreement and the Hoober Agreement are "governed by a choice of law provisions [sic] selecting North Carolina law as the governing law." Dkt. 14 at 14. Plaintiffs argue that while the choice of law provision in Hoober's employment paperwork appears in her Employment Agreement, not her Arbitration Agreement, in Washington instruments on the same topic executed together "should be read and construed together *as one contract*." Dkt. 14 at 14 (quoting *Cedar River Water & Sewer Dist. v. King Cty.,* 178 Wn.2d 763, 784–85 (2013)). Section 12 of Mordue's Agreement, titled "Governing Law" states that "[t]he terms of this Agreement shall be governed by, and construed in accordance with, the laws of the State of North Carolina." Mordue Agreement § 12. Plaintiffs argue that applying North Carolina law

will deprive them of their primary claims which are grounded in Washington law. Dkt. 14 at 14–15.

Movement makes separate arguments regarding the Hoober Agreement and the Mordue Agreement. Movement argues that the Choice of Law provision Hoober references is contained in her Team Leader Agreement and does not apply to her arbitration agreement. Dkt. 22 at 10. The section of Hoober's Team Leader Agreement titled "Choice of Law and Forum/Jurisdiction" states in part that "[t]he Parties agree that this Agreement will be interpreted in accordance with North Carolina law." Dkt. 21-1 at 12–13. Regarding the Mordue Agreement, Movement argues that "[t]he application of North Carolina law to determine the meaning and enforceability of the Arbitration Agreement does not in any way prejudice Mordue" because the agreement is enforceable under Washington or North Carolina contract law. Dkt. 22 at 10.[5]

Movement calls Plaintiffs' argument, that compelling arbitration would preclude relief under Washington wage and hour laws, "outrageous" and argues that it "appears to be based on a deliberate failure to read the plain language of the Agreements" because both arbitration agreements provide that the arbitrator is authorized "to award any remedy or relief that would have been available to the Parties, in their individual capacity, had the matter been heard in a court having jurisdiction over the claim," to specifically include attorneys' fees and costs. Dkt. 22 at 11 (citing Hoober Agreement § 8; Mordue

_____

[5]Despite explaining that this contracted provision states North Carolina law should be used to determine the enforceability of the agreements, Movement cites Washington law throughout its briefing on the issue of unconscionability. The Court therefore understands Movement to concede that Washington law applies to the threshold issue of unconscionability.

Agreement § 8). The Court construes Movement's arguments as an admission that their intent in contracting and their position as to the contracts' correct interpretation is that all rights and relief available under Washington law are available in arbitration. Therefore, any provisions in either Mordue or Hoober's contract are severed to the degree they contradict this admission. This finding applies to both the agreements to arbitrate and any jointly executed instrument which may be read as one contract under Washington law, consistent with Movement's position that nothing in the Team Leader Agreement precludes substantive relief under Washington law in arbitration. *See Cedar River Water & Sewer Dist.*, 178 Wn.2d at 784–85.

Second, "[a] subject-matter exclusion may also be nominally mutual, yet have the impermissible effect of being so one-sided and harsh that it is substantively unconscionable." *Brookdale Senior Living Communities, Inc. v. Hardy*, No. C15-96 MJP, 2015 WL 13446704, *4 (W.D. Wash. June 5, 2015) (provision excluding eviction from arbitration in landlord-tenant agreement weighs toward unconscionability under Washington law). "[M]utuality of obligation means that both parties are bound to perform the contract's terms—not that both parties have identical requirements." *Zuver*, 153 Wn.2d at 317. In *Zuver*, the Washington Supreme Court found that a provision which barred the plaintiff from collecting any punitive or exemplary damages but permitted the employer "to claim these damages for the only type of suit it would likely ever bring against [the employee], that is, for breach of her duty of nondisclosure of [the employer's] confidential information" provided "the employer alone access to a significant legal recourse." *Id.* at 318–19.

Section 3 of both the Hoober Agreement and the Mordue Agreement is titled

"Mutual Duty to Arbitrate," and reads in part "[b]y signing this Agreement, the Parties

agree that any arbitration shall be conducted before one neutral arbitrator selected by the

Parties." Hoober Agreement § 3; Mordue Agreement § 3. Plaintiffs argue that because

the agreements limit all claims which would be brought by employees to individual

arbitration, but Movement can and does initiate lawsuits against its employees,

sometimes joining multiple employees as defendants despite the arbitration agreements'

provisions prohibiting class arbitration, the agreements are sufficiently one-sided as to be

substantively unconscionable. Dkt. 14 at 16–19 (citing *Ingle v. Circuit City Stores, Inc.*,

328 F.3d 1165 (9th Cir. 2003)). Movement counters that the Washington Court of

Appeals in *Romney* "rejected the plaintiff employees' argument that an arbitration

agreement was overly harsh because it required them to arbitrate all claims but allowed

the employer to seek injunctive relief from a court." Dkt. 22 at 8 (citing *Romney*, 186

Wn.App. at 742). In *Romney*, the Washington Court of Appeals reasoned that the

injunctive relief provision was not at issue and did not impact the outcome of the matter

but assumed without deciding that if the clauses were unconscionable, they were "easily

severed from the agreement." *Romney*, 186 Wn.App at 742.

Plaintiffs cite particular cases where Movement has sued employees in both state

and federal court, Dkt. 14 at 17–19, and request that the Court take judicial notice of the

court filings in these cases, Dkt. 18.[6] Finding no dispute as to the authenticity and

---

[6] Fed. R. Evid. 201 governs judicial notice and states in part: "A judicially noticed fact
must be one not subject to reasonable dispute in that it is . . . capable of accurate and ready

accuracy of these filings, the Court will take judicial notice of the court filings contained in Dkt. 18.

Movement argues that one of the cases Plaintiffs cite, *Movement Mortgage, LLC v. Ward, Kelly, Stenger, and New Penn Financial, LLC*, No. 3:14–cv–23–RJC–DCK, 2014 WL 461137 (W.D.N.C. Feb. 5, 2014) ("*Ward*"), is irrelevant because the Team Leader Employment Agreement at issue in that case is substantially different from Plaintiffs' arbitration agreements. Dkt. 22 at 6. In the Court's reading it is similar to Plaintiffs' arbitration agreements in requiring the type of claims an employee would likely bring against an employer to be arbitrated, but different in that it does not include an individual arbitration provision, and so suit against multiple employees would not violate a mutual duty of individual proceedings. Dkt. 18-4 at 36–37.

Regarding Movement's suit against multiple employees in the remaining cases, Movement explains that the arbitration agreements "specifically excluded from arbitration claims seeking injunctive relief." Dkt. 22 at 6. While Plaintiffs do not argue their arbitration agreements contain an exception for injunctive relief such that they may be subject to suit, Hoober's Team Leader Agreement includes a paragraph titled "Remedies" which provides that Movement can seek injunctive relief for breach of that agreement. Dkt. 21-1 at 12.[7] Therefore, the Plaintiffs appear potentially subject to a suit

---

determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). A court can take judicial notice of "matters of public record." *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001). Movement does not question the authenticity of the records and cites them in its reply. Dkt. 22 at 6–7.

[7] As previously noted, Mordue's Team Leader or other employment agreement is not in the record.

for injunctive relief. However, Movement accurately represents that in three of the cases Plaintiffs cite, Movement's complaint alleges its intent to initiate arbitration once the court decides its claims for injunctive relief. Dkt. 22 at 7 (citing Dkt. 18-1 at 3; Dkt. 18-2 at 3; Dkt. 18-3 at 3). If Movement had not done so, it appears that the employees could have invoked the mutual duty to arbitrate the remaining claims on an individual basis once the injunctive relief claims were resolved.

Here, Plaintiffs' complaint prays for back wages, damages, prejudgment interest, and costs and fees, not injunctive relief. Dkt. 1, § VIII. Plaintiffs do not provide examples of the type of injunctive relief an employee would seek such that the Court may evaluate, even in a hypothetical case, whether the opportunity to seek injunctive relief against multiple defendants is so one-sided that it is unconscionable. While there may be other factual scenarios in which unequal access to injunctive relief against multiple defendants would be clearly unconscionable, the Court finds that on the facts at bar, Plaintiffs have not met their burden as the party opposing arbitration to show that an exception in favor of Movement for injunctive relief is unconscionable. *Romney*, 186 Wn.App. at 735.

Third, both the Mordue Agreement and the Hoober Agreement feature confidentiality provisions which state "[a]ll statements and information made or revealed during the arbitration process are confidential and neither you nor the company may reveal any such statements or information, except on a need-to-know basis or as permitted or required by law." Hoober Agreement § 10; Mordue Agreement § 10. Plaintiffs argue these provisions are substantively unconscionable because confidentiality provisions in arbitration agreements with repeat players on one side and one-time players

on the other create a substantial advantage in the repeat player in developing work

product, learning about arbitrators, and understanding legal issues. Dkt. 14 at 19 (citing

*McKee v. AT&T Corp.*, 164 Wn.2d 372, 398–99 (2008), *abrogated on other grounds by*

*AT&T v Mobility LLC v. Concepcion*, 563 U.S. 333 (2011); *Zuver*, 153 Wn.2d at 312–

314). In *McKee*, the Washington Supreme Court held a confidentiality clause in a

contract of adhesion substantively unconscionable on this basis and on the basis that

confidentiality provisions in consumer adhesion contracts violate Washington's "strong

policy that justice should be administered openly and publicly." *McKee*, 164 Wn.2d at

398–99.

Movement cites a number of authorities which the Court finds distinguishable or

not controlling. Movement argues that Ninth Circuit has held "there is nothing

unreasonable or prejudicial about 'a secrecy provision with respect to the parties

themselves.'" Dkt. 22 at 8 (citing *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1266

(9th Cir. 2017). However, in *Poublon* the Circuit relied on California law in rejecting the

plaintiff's policy argument that confidentiality provisions "inhibit employees from

discovering evidence from each other," *Poublon*, 846 F.3d at 1266 (9th Cir. 2017) (citing

*Sanchez v. Carmax Auto Superstores Cal., LLC*, Cal. Ct. App. 4th 398 (2014)), which

stands in contrast with the Washington Supreme Court's concern in *McKee* that claimants

would be prevented from "sharing discovery, fact patterns, or even work product." 164

Wn.2d at 398.

Similarly, Movement cites *Kilgore v. Keybank, Nat'l Ass'n*, 718 F.3d 1052, 1059

n.9 (9th Cir. 2013), for the proposition that the "Ninth Circuit has cautioned against

1    invalidating arbitration agreements on the basis of confidentiality provisions." Dkt. 22 at

2    8. In *Kilgore*, the Circuit found that under California law the plaintiffs had raised nothing

3    that could support a finding of substantive unconscionability, remarking in the cited

4    footnote that a confidentiality provision preventing disclosure of an arbitration award is

5    concerning when applied to a large class of plaintiffs but not for a small class, was

6    distinct from the general enforceability of the arbitration clause and could be raised in

7    arbitration. *Kilgore*, 718 F.3d at 1059 n.9. The provision in the agreements at bar covers

8    "all statements and information made or revealed," which goes substantially beyond the

9    arbitrator's award. The provision at bar appears to cover all evidence and legal argument

10   and directly implicates the concerns addressed in *McKee*, 164 Wn.2d at 398.

11        Movement also cites *Turner v. Vulcan, Inc.*, No. 71855-0-I, 190 Wn. App. 1048,

12   2015 WL 6684259 (2015) for the proposition that Washington courts value the benefit a

13   confidentiality provision might have on employee privacy. Dkt. 22 at 8.[8] *Turner*

14   distinguished its facts, involving "personal details" in an employment case, from *Zuver*,

15   which found a confidentiality provision unconscionable "because it hampered an

16   employee's ability to prove a pattern of discrimination," and from *McKee* which "held

17   the policy of confidentiality to be in direct conflict with public policy, particularly

18   because it dealt with consumers." 2015 WL 6684259 at *9. The Court finds that the facts

19   at bar are more like those in *Zuver*, where employees sought to prove a pattern of

20

---

21   [8] *Turner* is unpublished, so it "may be cited as non-binding authorit[y], if identified as
     such by the citing party, and may be accorded such persuasive value as the court deems
     appropriate." WA R. Gen. GR 14.1. Movement does not identify *Turner* as an unpublished case.

22   *See* Dkt. 22 at 8–9.

behavior, 153 Wn.2d at 315, than *Turner*, where the plaintiff was a single employee in the relatively unique position of lead "executive protection specialist" for Microsoft co-founder Paul Allen's personal security detail, 2015 WL 6684259, *1.

The Court concludes that employees seeking to enforce state law wage and hour claims would be substantially disadvantaged by the inability to benefit from repeat-player status in the ways the Washington Supreme Court has identified. Therefore, the Court finds the confidentiality provision is substantively unconscionable under Washington law. However, the Court agrees with Movement that this provision may be severed without substantially changing the nature of the agreement to arbitrate. *Gandee*, 716 Wn.2d at 603.

Fourth, Plaintiffs argue that the Mordue agreement requires arbitration in North Carolina. Section 3 of Mordue's agreement, titled "Mutual Duty to Arbitrate," states that "any arbitration hearing will be scheduled on a date or dates of mutual agreement and will be conducted within Mecklenburg County, North Carolina." Mordue Agreement § 3. Section 6, titled "Starting Arbitration and Costs," states that "[t]he arbitration shall take place in the county where you were employed by the Company." *Id.* § 6. Mordue was employed in Washington, so these provisions conflict. Plaintiffs argue that Movement intended to remove the provision siting arbitration in the county of employment, in favor of "a distant venue provision as a condition of access to arbitration for its Washington employees." Dkt. 14 at 20. Movement argues that "[t]o the extent Mordue claims that the North Carolina venue is unreasonable or 'unduly oppressive,' only that provision . . . should be deemed unconscionable," appearing to concede the issue. Dkt. 22 at 11. The

Court finds that the conflicting provision in Section 6 siting arbitration in North Carolina would impose substantial costs on Mordue and may be properly severed, *Gandee*, 716 Wn.2d at 603, leaving a valid agreement to arbitrate, *Chiron Corp.*, 207 F.3d at 1130.

In sum, the Court finds that the identified unconscionable and potentially unconscionable provisions do not pervade the agreement to arbitrate such that the Court cannot "easily excise" the problematic provisions "but enforce the remainder." *Zuver*, 153 Wn.2d at 320. Unlike *McKee*, severance would not "essentially require [the Court] to rewrite the dispute resolution agreement." 164 Wn.2d at 402–03. Movement conceded an interpretation of the choice law issue favorable to Plaintiffs and the conflicting venue provisions were as likely the result of a drafting error as of bad faith. Therefore, the Court severs the identified portions of the choice of law provision, the confidentiality provision, and the venue provision, and denies Plaintiffs' request that it find the entirety of the Hoober Agreement and the Mordue Agreement void.

**B.    Unclean Hands**

Plaintiffs argue that Movement's request to compel arbitration should be denied because it is an action in equity to compel specific performance, and the unclean hands doctrine "closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief." *Precision Instr. Mfg. Co v. Auto Maint. Mach. Co.*, 324 U.S. 806, 814 (1945). Plaintiffs raise the same argument the Court found unavailing in its discussion of the one-sided nature of the duty to arbitrate. Plaintiffs argue without more that "Defendant's conduct as to the matter in which it now seeks relief has not been equitable or fair." Dkt. 14 at 22. Because the Court did not find

the agreements were so permeated with unconscionability as to be stricken, and Plaintiffs

have not established that Movement acted in bad faith, it is similarly inappropriate to

deny the motion on the basis of unclean hands.

**C.     Remedy**

Movement asks the Court to compel arbitration on an individual basis and dismiss

Plaintiffs' class claims. Dkt. 7 at 8. Section 5 of both the Hoober Agreement and the

Mordue Agreement, titled "Arbitration of Individual Claims Only," states in part that

"[a]ll claims covered by this Agreement must be submitted on an individual basis. No

claims may be arbitrated on a class or collective basis. The Parties expressly waive any

right with respect to any covered Claims to submit, initiate, or participate as a plaintiff,

claimant or member in a class action, collective action or joint action, regardless of

whether the action is filed in arbitration or in court." Hoober Agreement § 5; Mordue

Agreement § 5. The Supreme Court has found that employers and employees may agree

to class action waivers. *Epic Systems Corp. v. Lewis*, 138 S. Ct 1612, 1619, 1632 (2018).

Moreover, Movement "may not be compelled under the [Federal Arbitration Act] to

submit to class arbitration unless there is a contractual basis for concluding that the party

*agreed* to do so." *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1412 (2019) (quoting *Stolt-*

*Nielsen S.A. v. AnimalFeels Int'l Corp.*, 559 U.S. 662, 684 (2010)).

Plaintiffs' only argument regarding the duty to arbitrate on an individual basis

addressed the one-sided nature of the contract. Plaintiffs did not argue that there is

evidence in the contract that Movement agreed to class arbitration. Under Local Rule

7(b)(2), the Court may consider a failure to respond as an admission that the motion has

merit, and there is no evidence in the record that Movement agreed to class arbitration. Local Rules W.D. Wash. LCR 7(b)(2). Because the Court finds the Hoober Agreement and the Mordue Agreement are both enforceable without their unconscionable provisions, the Court compels arbitration on an individual basis and dismisses Plaintiffs' class claims pursuant to the express language in the agreements.

Finally, if a court determines a matter is subject to arbitration "it may either stay the matter pending arbitration or dismiss the matter." *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002). The Court stays the matter pending arbitration.

### III.  ORDER

Therefore, it is hereby **ORDERED** that Movement's motion to compel arbitration on an individual basis, Dkt. 7, is **GRANTED**, subject to the exclusion of the severed unconscionable provisions as stated herein.

This case shall be stayed pending the conclusion of arbitration. The Clerk shall administratively close this matter. The parties shall immediately inform the Court when arbitration is complete or when the matter is otherwise resolved. In any event, the parties shall file a joint status report no later than June 1, 2020.

Dated this 23rd day of May, 2019.

BENJAMIN H. SETTLE
United States District Judge